**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Giavasis*, Slip Opinion No. 2020-Ohio-5453.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5453

THE STATE EX REL. WARE *v.* GIAVASIS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Giavasis*, Slip Opinion No. 2020-Ohio-5453.]**

*Mandamus—Public Records Act—Relator must establish by clear and convincing evidence entitlement to a writ of mandamus—There is no duty to provide to an inmate any public record concerning a criminal investigation or prosecution unless the judge who imposed the sentence finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person—Requests for case documents in cases commenced on or after July 1, 2009, are governed by the Rules of Superintendence, not the Public Records Act—Writ denied.*

(No. 2020-0043—Submitted July 21, 2020—Decided December 1, 2020.)

IN MANDAMUS.

————————

**Per Curiam.**

{¶ 1} Relator, Kimani Ware, filed an original action in this court for a writ of mandamus to compel the production of records in response to seven public-records requests that he sent in May 2019 and an eighth request he sent in June 2019. He has also asked this court to conduct an in camera inspection of the contested records and to award statutory damages pursuant to R.C. 149.43(C)(2). On March 25, 2020, we issued an alternative writ and ordered that evidence be submitted and briefs be filed pursuant to S.Ct.Prac.R. 12.05 for three respondents: Stark County Clerk of Courts Louis P. Giavasis, Stark County Chief Deputy Clerk of Courts Anthony J. Flex, and the Stark County Clerk of Court's Office (collectively, "the clerk's office"). 158 Ohio St.3d 1442, 2020-Ohio-1032, 141 N.E.3d 967.

{¶ 2} For the reasons set forth herein, we deny Ware's request for an in camera inspection of the records, deny the writ of mandamus, and deny statutory damages.

**Background**

{¶ 3} Ware is an inmate at the Trumbull Correctional Institution. On May 6, 2019, Ware prepared seven separate public-records requests directed to the Stark County Clerk of Courts. He requested:

- Request one: A copy of the docket sheets for case Nos. 1991-CR-1164, 2009-CR-2044, 1999-CR-167B, 1996-CR-1277, and 2019-CA-00003; a copy of the oath of office of Chief Deputy Clerk Flex; a copy of a roster listing the employees of the Stark County Clerk of Court's Office, a copy of the employee handbook for the clerk's office; and "a copy of the jury questionnaire form (Blank copy)."

- Request two: A copy of the "Stark County Grand Jury reports from January 1, 2018 through May 6, 2019."

- Request three: A copy of Giavasis's oath of office and copies of the employee-evaluation forms for Giavasis and Flex.

2

- Request four: A copy of the leave and time-off requests submitted by Giavasis and Flex from January 1, 2018, through May 6, 2019.
- Request five: A copy of the payroll records for Giavasis and Flex from January 1, 2018, through May 6, 2019.
- Request six: A copy of the time cards for Giavasis and Flex from January 1, 2018, through May 6, 2019.
- Request seven: A copy of Giavasis's and Flex's personnel files.

Ware alleges that he sent all of these requests by certified mail, to the Stark County Clerk of Courts. However, the clerk's office claims that it received only request one.

{¶ 4} The clerk's office forwarded request one to the county prosecuting attorney, who responded via letter to Ware on June 4, 2019. In that letter, the prosecuting attorney declined to provide Ware copies of the docket sheets until and unless Ware obtained an order from his sentencing judge. In response to Ware's request for "the jury questionnaire form (Blank copy)," the assistant prosecuting attorney wrote that "we cannot provide you with [the] requested item * * * as there is no such document in the possession of the Stark County Clerk of Courts that is responsive to your request." As for the remaining records sought in request one, the letter indicated that copies for Ware had been made at a total cost of $5.20, and that he would receive the records once he paid the invoice.

{¶ 5} Although Ware submitted his request to the clerk's office, not to the prosecutor's office, the response letter from the prosecutor's office stated: "On May 13, 2019 *this office* received your public records request, dated May 6, 2019." (Emphasis added.) Although Ware acknowledges receiving this response from the prosecutor's office, he complains that he should have received a response from the clerk's office.

{¶ 6} On June 17, 2019, Ware sent another request ("request eight"). Request eight, which was also sent by certified mail, repeated the request for a copy of the "Juror Questionnaire Form (Blank Copy)." It also asked for a copy of the docket sheets for four additional cases: 1993-CR-3870, 2012-CR-1709, 2009-CR-828, and 2004-CR-2225.

{¶ 7} On July 1, 2019, the clerk's office denied Ware the records that he sought in request eight. The clerk's office stated that pursuant to R.C. 149.43(B)(8), it would not provide the docket sheets until Ware obtained a finding from his sentencing judge that the requested information was "necessary to support what appears to be a justiciable claim." The clerk's office also informed Ware that "no such document titled 'Juror Questionnaire Form (Blank Copy)' exist[ed] with [that] office."

{¶ 8} The clerk's office claims to have no record of requests two through seven and alleges that it became aware of those requests on January 17, 2020, upon receipt of the mandamus complaint. Thereafter, the clerk's office sent an initial response letter, dated January 22, informing Ware that it had just learned of his additional requests and that it was "determining what records [Ware is] entitled to and compiling them to determine the cost of these records."

{¶ 9} On January 29, 2020, the clerk's office sent a formal response regarding requests two through seven. The office refused to provide Ware the grand-jury reports (request two) without a judicial finding from his sentencing judge in accordance with R.C. 149.43(B)(8). The letter further explained that employee-evaluation forms for Giavasis and Flex (request three) did not exist, and that the leave and time-off requests (request four) were included in the personnel files (request seven). The office informed Ware that the remaining records totaled 255 pages and a payment of $25.50 for the copies was required along with a self-addressed, postage-prepaid envelope. The letter explained to Ware that upon receipt of the money and the envelope, the office would send the records to him.

{¶ 10} Ware has not provided an order from his sentencing judge for the case dockets sought in requests one and eight or the grand-jury reports sought in request two. Nor has he paid the copying costs for requests three through seven.

## Procedural history

{¶ 11} Ware filed an original action for a writ of mandamus in this court on January 9, 2020. In addition to the clerk's office, the complaint named as respondents Stark County Prosecuting Attorney John D. Ferrero, Assistant Prosecuting Attorney David E. Deibel, and the Stark County Prosecutor's Office. Respondents filed a motion to dismiss, which was granted as to Ferrero, Deibel, and the Stark County Prosecutor's Office. 158 Ohio St.3d 1442, 2020-Ohio-1032, 141 N.E.3d 967. The remaining parties have submitted evidence and filed merit briefs in accordance with S.Ct.Prac.R. 12.05.[1] *See id.*

## Legal analysis

{¶ 12} Ohio's Public Records Act, R.C. 149.43, requires a public office to make copies of public records available to any person upon request within a reasonable period of time. R.C. 149.43(B)(1). A "public record" is a record "kept by any public office." R.C. 149.43(A)(1). Mandamus is an appropriate remedy by which to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6.

{¶ 13} To be entitled to the writ, Ware must demonstrate that he has a clear legal right to the requested relief and that the clerk's office has a clear legal duty to provide that relief. *See State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. Ware must prove his right to relief by

---

1. In their merit brief, respondents suggest that the Stark County Clerk of Courts Office should be dismissed as a party because it is not sui juris, and therefore cannot be sued. Because the legal analysis relating to this argument is irrelevant to the outcome of the case, we decline to resolve this issue.

clear and convincing evidence. *Id.* However, Ohio's Public Records Act "is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

*Ware's request for case-docket sheets and grand-jury reports*

{¶ 14} Ware requested the docket sheets for various cases as well as specific grand-jury reports. The clerk's office cited R.C. 149.43(B)(8) as the basis for denying Ware's requests.

{¶ 15} R.C. 149.43(B)(8), an exception to disclosure, provides that there is no duty to provide to an inmate "any public record concerning a criminal investigation or prosecution" unless "the judge who imposed the sentence * * * finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person." For example, an inmate who seeks a copy of his indictment cannot compel the production of those public records without a finding by the sentencing judge that the record supports a valid claim. *See McCain v. Huffman*, 151 Ohio St.3d 611, 2017-Ohio-9241, 91 N.E.3d 749, ¶ 12.

{¶ 16} Exceptions to disclosure under the Public Records Act are strictly construed against the public-records custodian, who has the burden to establish the applicability of an exception. *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 18. The evidence shows that Ware is an inmate and that he has not obtained a finding from his sentencing judge under 149.43(B)(8). And Ware does not dispute that the docket sheets and grand-jury reports are "public record(s) concerning a criminal investigation or prosecution," *id.* Therefore, the clerk's office has proven the applicability of this statutory exception.

{¶ 17} In his merit brief, Ware does not present any legal argument to counter the exception included in R.C. 149.43(B)(8) or show why he is entitled to

the docket sheets or grand-jury reports.  His sole argument in his second proposition of law, which addresses only the docket sheets, asserts that the docket sheets are public records and therefore must be produced.  But R.C. 149.43(B)(8) *assumes* that the records in question are public records and fashions an exception to disclosure *despite* the fact that they are public records.

**{¶ 18}** We note at least two of the docket sheets are not governed by the Public Records Act.  Specifically, Ware requested the docket sheets for case Nos. 2019-CA-00003 and 2012-CR-1709.  Requests for case documents in cases commenced on or after July 1, 2009, are governed by the Rules of Superintendence, not the Public Records Act.  *State ex rel. Parker Bey v. Byrd*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57, ¶ 11, citing Sup.R. 47(A)(1); *see also State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d, ¶ 21, fn. 2 (holding that the superintendence rules were inapplicable to a request for case documents from a case commenced in 2006).[2]  Likewise, the requests for grand-jury reports from 2018 and 2019 are not governed by the Public Records Act.  However, those facts do not change the outcome of this case.

**{¶ 19}** The fact that Ware cited only the Public Records Act *in his public-records requests* is not fatal to his demand for documents that are governed by the Rules of Superintendence.  "Generally, it is not necessary to cite a particular rule or statute in support of a records request until the requester attempts to satisfy the more demanding standard applicable when claiming that he is entitled to a writ of mandamus to compel compliance with the request."  *Parker Bey* at ¶ 14.  However, because Ware has invoked only the Public Records Act *in this action*, Ware is not entitled to a writ of mandamus as to any documents governed by the Rules of Superintendence.  *State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance*

---

2.  Ware also requested two docket sheets from 2009: case Nos. 2009-CR-2044 and 2009-CR-828. It is unclear from this record when in 2009 those cases were commenced, and hence, it is unclear whether the Rules of Superintendence or Ohio's Public Records Act governs those requests.

*Commt.*, 159 Ohio St.3d 211, 2019-Ohio-5157, 150 N.E.3d 43, ¶ 21; *see also State ex rel. Richfield v. Laria*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, ¶ 8 ("Sup.R. 44 through 47 deal specifically with the procedures regulating public access to court records and are the sole vehicle for obtaining records in actions commenced after July 1, 2009").

{¶ 20} For these reasons, we hold that Ware is not entitled to a writ of mandamus as to the docket sheets and grand-jury reports.

*Ware's remaining public-records requests*

{¶ 21} Ware argues in his first proposition of law that he is entitled to the public records in his requests one through seven. This claim has two facets. His primary concern is that the clerk's office took an unreasonable amount of time to respond to requests two through seven, a contention that is addressed below. Alternatively, he makes a merits-based argument.

{¶ 22} Apart from the docket sheets and grand-jury reports discussed above, the only requests that the clerk's office failed to honor were those seeking employee-evaluation forms for Giavasis and Flex and "Juror Questionnaire Form (Blank Copy)," both of which the office claims do not exist. Ware has presented no argument or evidence to suggest that these records *do* exist, and as the party seeking the writ of mandamus, he carries the burden of proof.

{¶ 23} As to the remaining records, the clerk's office has not denied those requests; it has simply demanded payment in advance before providing the copies. The Public Records Act does not require a public-records custodian to provide copies of records free of charge. *State ex rel. Call v. Fragale*, 104 Ohio St.3d 276, 2004-Ohio-6589, 819 N.E.2d 294, ¶ 6. Instead, the statute "requires only that copies of public records be made available at cost." *Id.* Thus, R.C. 149.43(B)(1) "authorizes a public office to require the prepayment of costs before providing copies of public records." *State ex rel. Dehler v. Spatny*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831, ¶ 4.

{¶ 24} The clerk's office has offered to make the records available and has identified the cost for copying them. Ware has not paid the cost or challenged the reasonableness of the amount. Consequently, he is not entitled to a writ of mandamus as to those public-records requests.

*Ware's request for an in camera inspection*

{¶ 25} In his complaint, Ware asked for an order compelling the clerk's office to file the records under seal for an in camera inspection. As our preceding discussion has shown, the legal analysis of Ware's mandamus complaint and the clerk's office's defense against the complaint does not depend on the content of the records. An inspection of the records is therefore unnecessary, and so we deny this request.

*Statutory damages*

{¶ 26} In his third proposition of law, Ware argues for an award of statutory damages. Under the Public Records Act, a requester seeking statutory damages must prove that the request was delivered "by hand delivery, electronic submission, or certified mail." R.C. 149.43(C)(2). The evidence in this case shows that Ware delivered at least some of his requests by certified mail. However, Ware is not entitled to statutory damages.

{¶ 27} A person requesting public records "shall" be entitled to recover an award of statutory damages "if a court determines that the public office or the person responsible for the public records failed to comply with an obligation in accordance with [R.C. 149.43(B)]." R.C. 149.43(C)(2). Ware suggests two interrelated violations by the clerk's office of duties owed to him under the Public Records Act.

{¶ 28} First, he contends that the clerk's office failed in its duty to provide the records he requested. As indicated above, we conclude that the clerk's office did not breach any duty under the Public Records Act. Alternatively, Ware objects to the length of time the clerk's office took to respond to requests one through

seven. R.C. 149.43(B)(1) states that "a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost *and within a reasonable period of time*." (Emphasis added.) According to Ware, the clerk's office took "seven months to respond to [his] seven written public records requests served by certified mail on May 13, 2019."

{¶ 29} With respect to request one, the evidence shows that the *prosecutor's office* responded on June 4, 2019, approximately three weeks after the request first reached the clerk's office. Ware does not allege that three weeks was an unreasonable length of time; rather, he refuses to accept the June 4 letter as a response written on behalf of the clerk's office and therefore concludes that the clerk's office never responded *at all*.

{¶ 30} By statute, the county prosecuting attorney is counsel for the clerk's office. R.C. 309.09(A). Ware has cited no authority for the proposition that it is improper or insufficient for a public-records response to be sent by counsel for the public office, rather than by the public office itself. As shown above, the assistant prosecuting attorney wrote that "*this office* received your public records request." (Emphasis added.) But elsewhere in the letter, the assistant prosecuting attorney made clear that he was responding on behalf of the clerk's office, writing that "we cannot provide you with [the jury questionnaire form (Blank copy)], as there is no such document *in the possession of the Stark County Clerk of Courts* that is responsive to your request." (Emphasis added.) Therefore, we hold that the clerk's office did not fail in its duty to respond timely to request one.

{¶ 31} A different analysis applies to requests two through seven. *If* those requests were served at the same time as request one, then the clerk's office did not respond in a timely fashion. *See, e.g.*, *State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136, ¶ 21 (holding that a requester was entitled to statutory damages when the city failed to respond to her request for two months), *superseded by statute on other grounds*, *State ex rel. Cincinnati Enquirer*

10

*v. Cincinnati*, 157 Ohio St.3d 290, 2019-Ohio-3876, 135 N.E.3d 772. But Ware has not proved by clear and convincing evidence that he placed all seven requests in a single envelope.

{¶ 32} The envelope itself is in the record, but it does not prove anything about its contents one way or the other. Ware states in his affidavit that he sent seven requests. The clerk's office, on the other hand, submitted affidavit testimony that the office had received only a single request and that a search of the office did not locate Ware's other six requests. Thus, the evidence on this point is evenly balanced. And in such a situation, the requester has not satisfied the heightened burden of proof necessary for an award of statutory damages. *See State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419, ¶ 27 (holding that the requester failed to prove hand-delivery by clear and convincing evidence, given that the video that the requester submitted was inconclusive and there was contradictory evidence that had been submitted by the respondent").

{¶ 33} We deny Ware's request for statutory damages.

**Conclusion**

{¶ 34} We deny Ware's request for an in camera review of the requested records, deny the writ of mandamus, and deny statutory damages.

Writ denied.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

DEWINE, J., concurs in judgment only.

KENNEDY, J., dissents, with an opinion.

————————————

**KENNEDY, J., dissenting.**

{¶ 35} I disagree with the majority's continued exercise of raw judicial power in relying upon the Rules of Superintendence instead of Ohio's Public

Records Act to govern the requests for case documents in cases commenced on or after July 1, 2009. All of relator Kimani Ware's requests—and any remedies that may be available to him in the event he is successful—should be considered pursuant to the Public Records Act's statutory framework. Also, the record establishes by clear and convincing evidence that Ware served respondents, Stark County Clerk of Courts Louis P. Giavasis, Stark County Chief Deputy Clerk of Courts Anthony J. Flex, and the Stark County Clerk of Court's Office (collectively, "the clerk's office") by certified mail with public-records requests two through seven and I would award him statutory damages in the amount of $1,000.

{¶ 36} Therefore, I dissent.

*Ohio's Public Records Act versus Rules of Superintendence*

{¶ 37} Recently, this court "implicitly overturn[ed] decades of caselaw holding that the Public Records Act applies to the courts," *State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance Commt.*, 159 Ohio St.3d 211, 2019-Ohio-5157, 150 N.E.3d 43, ¶ 50 (Kennedy, J., concurring in part and concurring in judgment only in part), and conclusively held that a party seeking to obtain access to case documents in actions commenced on or after July 1, 2009 must utilize the process set forth in Sup.R. 44 through 47, *id*. at ¶ 27. Consequently, "[i]f a party seeks to obtain judicial records through means other than Sup.R. 44 through 47, the party is not entitled to a writ of mandamus, as the Rules of Superintendence are the sole vehicle by which a party may seek to obtain such records." *Id*. at ¶ 20.

{¶ 38} Today, this court applies this reasoning to Ware's requests for the docket sheets for case Nos. 2019-CA-00003 and 2012-CR-1709. However, the docket sheets are records kept by the clerk's office and access to the docket sheets is governed by the Public Records Act; the docket sheets are not a "court record" within the meaning of the Rules of Superintendence. In applying the Rules of Superintendence, the majority preempts the Public Records Act and "abridg[es] [Ware's] substantive right to access" public records, *State ex rel. Parker Bey v.*

*Byrd*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57, ¶ 35 (Kennedy, J., concurring in judgment only in part and dissenting in part), and to attorney fees, costs, and statutory damages as established by the legislature under the Public Records Act, *id*. at ¶ 57 (Kennedy, J., concurring in judgment only in part and dissenting in part).

**{¶ 39}** The Rules of Superintendence were promulgated pursuant to our authority in Article IV, Section 5(A)(1) of the Ohio Constitution. Section 5(A)(1) states: "In addition to all other powers vested by this article in the supreme court, the supreme court shall have general superintendence over all courts in the state. Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated by the supreme court."

**{¶ 40}** Commentators have noted that "the purpose of this provision was to remedy case-management problems that had caused backlogs in resolving cases." *Parker Bey* at ¶ 38 (Kennedy, J., concurring in judgment only in part and dissenting in part), citing Marburger & Idsvoog, *Access with Attitude: An Advocate's Guide to Freedom of Information in Ohio* 151-152 (2011); Milligan & Pohlman, *The 1968 Modern Courts Amendment to the Ohio Constitution*, 29 Ohio St.L.J. 811, 821-822 (1968). We have also recognized that the "Rules of Superintendence 'are designed "(1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts." ' " *Id*., quoting *State v. Steffen*, 70 Ohio St.3d 399, 409, 639 N.E.2d 67 (1994), quoting *State v. Singer*, 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216 (1977).

**{¶ 41}** Article IV, Section 5(B) authorizes a second type of court rules: "The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. * * * All laws in conflict with such rules shall be of no further force or effect after

such rules have taken effect." "Section 5(B) expressly empowers this court to adopt procedural rules that supersede the enactments of the General Assembly." *Parker Bey*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57, at ¶ 39 (Kennedy, J., concurring in judgment only in part and dissenting in part), citing *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, ¶ 30. . However, the framers of the Modern Courts Amendment of 1968 placed two important limitations on our authority to supplant the enactments of the General Assembly. *Id.* First, "our procedural rules may not abridge, enlarge, or modify any substantive right; and second, the General Assembly has oversight because the legislature by joint resolution may disapprove any proposed procedural rule prior to its taking effect." *Id.*, citing Article IV, Section 5(B), Ohio Constitution.

{¶ 42} Article IV, Section 5(A)(1), which empowers our superintendence over the courts, stands in stark contrast. It does not grant "this court a similar power to preempt the lawful enactments of the legislative branch of government by adopting a rule under our authority to supervise the lower courts." *Parker Bey* at ¶ 40 (Kennedy, J., concurring in judgment only in part and dissenting in part). And it "does not provide that the Superintendence Rules supersede all laws that are in conflict with them, nor does it contain any requirement to submit proposed superintendence rules to the General Assembly for review." *Id.* The Superintendence Rules therefore, "do not have the same force of law as our procedural rules or a statute." *Id.* Instead, as the preface to the Superintendence Rules explains, the rules are "simply to ensure the 'prompt disposition of all causes, at all times, in all courts of this state.' " *Id.*

{¶ 43} As I previously stated:

The Rules of Superintendence are neither a statute nor a product of common law. The Public Records Act, R.C. 149.43, defines a "public record" as a record kept by any public office, R.C.

14

149.43(A)(1), including the clerk's office, R.C. 149.011(A).
Therefore, the clerk is required to provide access to case documents
and administrative records pursuant to the Public Records Act.

*Id*. at ¶ 25 (Kennedy, J., concurring in judgment only in part and dissenting in part).

{¶ 44} Therefore, I would consider all of Ware's public-records requests—including the 2012 and 2019 docket-sheet requests—pursuant to the Public Records Act.

*Statutory Damages*

{¶ 45} The majority concludes that Ware is not entitled to statutory damages. With respect to requests two through seven, the majority has determined that Ware failed to prove by clear and convincing evidence that he placed all seven requests in a single envelope. I disagree. Contrary to the position of the majority, the record in this matter proves by clear and convincing evidence that Ware placed all seven requests in a single envelope, and therefore he is substantively eligible for statutory damages as to those requests.

{¶ 46} R.C. 149.43(B)(1)[3] states that "a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." Pursuant to R.C. 149.43(C)(2), a person who makes a public-records request "shall be entitled to recover * * * statutory damages * * * if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with [R.C. 149.43(B)]." If a requester who makes a written request by hand-delivery, electronic submission, or certified mail to the public office is

---

3. Public-records requests are governed by the version of R.C. 149.43 that was in effect at the time that the request was made. *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11. The version of the Public Records Act that governs Ware's requests, R.C. 149.43 as amended by 2018 Sub.H.B. No. 425, took effect in April 2019.

wrongfully denied public records, he "shall" be entitled to statutory damages of $100 each business day—"beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars." R.C. 149.43(C)(2); *see also State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 23.

{¶ 47} The burden is on the requester to prove the requester's delivery method by clear and convincing evidence. *See State ex rel. McDougald v. Greene*, ___ Ohio St.3d ___, 2020-Ohio-3686, ___ N.E.3d ___, ¶ 14. Clear and convincing evidence is " 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 48} Ware attests that he sent public-records requests one through seven to the clerk's office in a single, certified-mail envelope, with the envelope having the tracking No. 9590 9402 4371 8190 6964 48. The clerk's office maintains that it had received only request one and that a search of the office did not locate requests two through seven. The majority contends that the evidence is evenly balanced, but there is more evidence before this court that should be considered.

{¶ 49} The return-address section of the certified-mail envelope contains Ware's handwritten notation "*7 Public Records Requests*." The certified-mail receipt also references the seven requests. Underneath the address for the Stark County Clerk of Courts is Ware's handwritten notation "Attn. 7 Public Request Records." Finally, Ware has provided copies of requests one through seven, all dated May 6, 2019. This demonstrates, by clear and convincing evidence, that Ware placed all seven requests in the certified-mail envelope, with the tracking No.

9590 9402 4371 8190 6964 48, that was received by the clerk's office on May 13, 2019. Therefore, Ware is substantively eligible for statutory damages for his public-records requests two through seven. And, given the time that has passed from the date on which Ware filed his complaint to when the clerk's office responded, Ware is eligible for the statutory maximum of $1,000.

{¶ 50} A court may reduce or decline to award statutory damages if it finds that based on the law as it existed at the time that the public office allegedly failed to comply with R.C. 149.43, "a well-informed public office * * * reasonably would believe that the conduct * * * did not constitute a failure to comply * * * with [R.C. 149.43(B)]," R.C. 149.43(C)(2)(a), and that "a well-informed public office * * * reasonably would believe that the conduct * * * of the public office * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct," R.C. 149.43(C)(2)(b).

{¶ 51} The factors that allow a court to reduce statutory damages under R.C. 149.43(C)(2) do not apply. Therefore, Ware is entitled to the full award of statutory damages.

*Conclusion*

{¶ 52} The majority continues to deny the citizens of Ohio the substantive right to access court records and to the available remedies under the Public Records Act. It is the Public Records Act, not the Rules of Superintendence, that govern our review of requests for public records, regardless of whether the record is a case document. Additionally, the record establishes by clear and convincing evidence that Ware served the clerk's office by certified mail with public-records requests two through seven and I would award Ware statutory damages in the amount of $1,000.

{¶ 53} Therefore, I dissent.

––––––––––––––––––

Kimani Ware, pro se.

John D. Ferrero, Stark County Prosecuting Attorney, and Jessica L. Logothetides, Assistant Prosecuting Attorney, for respondents.

_____