[Cite as *State ex rel. Ware v. Kurt*, 2023-Ohio-202.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO EX REL. KIMANI
WARE

    Relator

    v.

SANDRA KURT, SUMMIT COUNTY
CLERK OF COURTS

    Respondent

C.A. No.    29622

ORIGINAL ACTION IN
MANDAMUS

DECISION AND FINAL JUDGMENT ENTRY

Dated: January 25, 2023

PER CURIAM.

{¶1} Relator, Kimani Ware, filed a petition for a writ of mandamus to compel Summit County Clerk of Court Sandra Kurt to respond to his public records request. After this Court granted summary judgment in favor of Ms. Kurt, Mr. Ware appealed, and the Ohio Supreme Court affirmed in part, reversed in part, and remanded for further consideration. This Court ordered the parties to file additional briefs related to the issues this Court must address on remand. Both parties filed responses and the matter is now ripe for decision.

{¶2} The Supreme Court summarized the history of the case as follows:

{¶ 3} In a December 2019 complaint for a writ of mandamus, Ware alleged that he sent a total of ten public-records requests in January 2019 by certified mail to the Summit County Clerk of Courts' office seeking the production of 37 different documents. He requested documents related to clerk's office employees, policies, and budget information, as well as grand-jury reports, certain oaths of office, the dockets of a specific judge for a specified period, and the transcript of a 9-1-1 call in his own criminal case. Ware alleged that Kurt did not respond to his requests, and he sought statutory damages under R.C. 149.43(C) for the alleged failure to produce the requested records.

{¶ 4} Kurt filed an answer and a motion for summary judgment. In her motion for summary judgment, Kurt argued that the complaint should be dismissed as moot because she had either provided Ware with the requested documents or explained why she was unable to do so. Ware filed a reply to Kurt's motion and his own motion for summary judgment. He admitted receiving some of the documents that he had requested but maintained that Kurt failed to provide everything that he had requested. Ware also argued that he was entitled to statutory damages because Kurt had acted in bad faith, ignoring his January 2019 public-records requests and failing to promptly provide all the documents that are responsive to those requests.

*State ex rel. Ware v. Kurt*, Slip Opinion No. 2022-Ohio-1627, ¶ 3-4.

**{¶3}** The Supreme Court recognized that the threshold question in a public-records case is whether the Public Records Act or the Rules of Superintendence govern the request. *Id.* at ¶ 10. The Supreme Court disagreed with this Court's conclusion that the Rules of Superintendence applied to most of the documents Mr. Ware requested. *Id.* at ¶ 13. It remanded with directions for this Court to determine

(1) which documents subject to the Public Records Act were produced to Ware, (2) whether Kurt had legitimate reasons for rejecting Ware's requests as to the documents that were not produced, and (3) whether Ware is entitled to statutory damages for the document requests that are subject to the Public Records Act.

*Id.* at ¶ 31. On remand, this Court ordered the parties to file responses identifying which documents were produced and, for those that were not produced, whether Ms. Kurt had a legitimate reason for rejecting Mr. Ware's request. Both parties filed responses.

**{¶4}** Mr. Ware set forth a list of documents he received followed by a list of documents he claimed he did not receive. Ms. Kurt responded indicating which documents she provided and which she did not, further explaining why she did not provide those documents that were not given to Mr. Ware. Mr. Ware did not reply to Ms. Kurt's response.

**{¶5}** To facilitate our review of the requests, some additional background is helpful. Mr. Ware asserted in his complaint that he sent ten public record requests, each requesting

multiple documents, to Ms. Kurt in January 2019. He further claimed that he served the requests by certified mail. Each of the ten requests was in the form of a letter. All ten letters were, according to Mr. Ware, sent in one envelope. There is no dispute that Mr. Ware's 10 letters requested a total of 37 documents. What is disputed is whether Ms. Kurt actually received those requests in January 2019 and which documents Ms. Kurt has provided.

{¶6} The January 2019 certified mail return receipt is not signed by a named person. Instead, it is signed "C.O.C." Mr. Ware contends this means "Clerk of Courts." And it might. Nevertheless, Ms. Kurt asserts that she was unaware of the request until January 2020 when she was served with Mr. Ware's complaint for writ of mandamus. Ms. Kurt sent documents responsive to most of the public records Mr. Ware requested within just a few weeks after Mr. Ware's complaint was filed and served.

{¶7} We will return to the question of when Ms. Kurt received the requests after we address the first question the Supreme Court directed this Court to consider: which documents subject to the Public Records Act were produced to Mr. Ware. *Ware* at ¶ 31.

*1. Which documents were produced?*

{¶8} As previously noted, Mr. Ware requested a total of 37 records. The Supreme Court determined that four of those requests were not subject to the Public Records Act and, instead, fell under the public records provisions of the Ohio Rules of Superintendence. The Supreme Court also affirmed this Court's conclusion that Mr. Ware had not met the requirements under the Public Records Act to receive one of the requested records. We therefore limit our consideration to 32 items.

{¶9} The following chart identifies the 37 records, or groups of records, Mr. Ware requested. It also indicates the responses provided by Mr. Ware and Ms. Kurt as to whether the

documents were provided and received. Finally, in the interest of completeness, this chart

includes the five items that this Court need not address based on the Supreme Court's decision.

| Record Requested | Mr. Ware's Response | Ms. Kurt's Response |
|---|---|---|
| 1. All calendars from 1/1-1/14/19 of Sandra Kurt and Jackie Ludle. | Received | Sent 1/29/20 |
| 2. Employee time records of Jackie Ludle and Sandra Kurt (from December 1, 2018, thru January 14, 2019). | Ludle – Received Kurt – Not received | Ludle – sent 1/29/20 Kurt – does not exist – informed Mr. Ware on 1/29/20 |
| 3. Meeting notices of Summit County Clerk of Courts' office, from November 1, 2018, thru January 14, 2019. | Not received | Does not exist – informed Mr. Ware on 1/29/20 |
| 4. One Time disposal for obsolete records (RC-1 Form) for the year 2018. | Not received | Does not exist – informed Mr. Ware on 1/29/20 |
| 5. Performance Evaluation Form of Jackie Ludle and Sandra Kurt. | Ludle – Received Kurt – Not received | Ludle – sent 1/29/20 Kurt – does not exist – informed Mr. Ware on 1/29/20 |
| 6. Travel expense records of Sandra Kurt and Jackie Ludle. | Ludle – No response as to whether received Kurt – Not received | Ludle – does not exist – informed Mr. Ware on 1/29/20 Kurt – overbroad and does not exist – informed Mr. Ware on 1/29/20 |
| 7. Oath of office of deputy clerk Jackie Ludle. | Received | Sent 1/29/20 |
| 8. Grand Jury Reports of the Summit County Jail for the year 2018, that are recorded in the Summit County Clerk of Courts' office. | ***Supreme Court held this falls under the Superintendence Rules.*** | |
| 9. Summit County Sheriff oath of office, that is recorded in the in the Summit County Clerk of Courts' office. | Received | Sent 1/29/20 |
| 10. Summit County Clerk of Courts' office nepotism policy. | Received | Sent 1/29/20 |

| | | |
|---|---|---|
| 11. Roster listing of employees of the Summit County Clerk of Courts' office. | Received | Sent 1/29/20 |
| 12. Personnel files of Sandra Kurt and Jackie Ludle. | Ludle – Received Kurt – Not received | Ludle – sent 1/29/20 Kurt – does not exist – informed Mr. Ware on 1/29/20 |
| 13. Grand Jury schedule sheets from December 1, 2019, thru January 14, 2019, for indictments that returned "a true bill" or "No bill". | *Supreme Court held this falls under the Superintendence Rules.* | |
| 14. Handbook/manual for employees of the Summit County Clerk of Courts' office. | Not received | Overbroad as to entire handbook, but specific policies mentioned provided on 1/29/20. Entire handbook provided July 11, 2022. |
| 15. Records Retention Schedule (current) and Records Retention Schedule document (RC-2) for 2016. | Not received | Sent 1/29/20 |
| 16. Oath of office of Sandra Kurt. | No response as to whether received | Sent 1/29/20 |
| 17. Summit County Clerk of Courts' office public records policy. | Not received | Sent 1/29/20 |
| 18. Certificate of disposal (RC-3 forms) of destruction of employee personnel files. | Received | Sent 1/29/20 |
| 19. Certificate of disposal (RC-3 forms) of destruction of summit county Clerk of Courts' office financial records of 2018. | Received | Sent 1/29/20 |
| 20. Annual budget records for the year 2018. | Not received | Sent 1/29/20 |
| 21. Certificate of disposal (RC-3 forms) for employee financial and time records for 2018. | Received | Sent 1/29/20 |

| | | |
|---|---|---|
| 22. Certificate of disposal (RC-3 forms) for destruction of Summit County Clerk of Courts' Docket Books for 2015-2016. | Not received | Unclear request – sent some 1/29/20 |
| 23. All purchase orders of supplies, that the Summit County Clerk of Courts' office purchased, from December 1, 2018, thru January 3, 2019. | Received | Sent 1/29/20 |
| 24. Grants that the Summit County Clerk of Courts' office received from January 3, 2015, thru January 1, 2019. | Not received | Does not exist – informed Mr. Ware on 1/29/20 |
| 25. All Dockets that Judge Joy Malek Oldfield presided over from October 1, 2018, thru January 14, 2019. | ***Supreme Court held this falls under the Superintendence Rules.*** | |
| 26. Certificate of records disposal (RC-3 forms) for employee leave form of Summit County Clerk of Courts' office for 2018. | Received | Sent 1/29/20 |
| 27. All requests for time off, from October 1, 2018, thru January 14, 2019, for Sandra Kurt and Jackie Ludle. | Ludle – Received Kurt – Not received | Ludle – sent 1/29/20 Kurt – does not exist – informed Mr. Ware on 1/29/20 |
| 28. Oath of office of each deputy clerk of Summit County Clerk of Courts' office. | Received | Overbroad request – sent some from specific time period on 1/29/20 |
| 29. Election certificate of Sandra Kurt. | Not received | Sent 1/29/20 |
| 30. Summit County Clerk of Courts' public records request poster. | Not received | Sent 1/29/20 |
| 31. Summit County Clerk of Courts' office employees dress code policy. | Not received | Sent 1/29/20 |
| 32. Employees Cash Handling Policy and Procedures. | Not received | Sent 1/29/20 |
| 33. Summit County Clerk of Courts' professionalism policy. | Not received | Does not exist – informed Mr. Ware on 1/29/20 |

| 34. Transcript (certified copy) of the 911 tape from case no. CA-22232, Docket no. 24. | *The Supreme Court affirmed this Court's decision on this.* | |
|---|---|---|
| 35. Summit County Clerk of Courts' office equal opportunity policy. | Not received | Sent 1/29/20 |
| 36. Summit County Clerk of Courts' office sick leave policy. | Not received | Sent 1/29/20 |
| 37. Judge Joy Malek Oldfield, Oath of Office, as a Summit County court of common pleas judge, recorded in Summit County Clerk of Courts' office. | *Supreme Court held this falls under the Superintendence Rules.* | |

{¶10} Our review of the responses demonstrates that Mr. Ware acknowledged that he received requests 1, 7, 9, 10, 11, 18, 19, 21, 23, 26, and 28. He also acknowledged receiving, as it relates to Ms. Ludle, requests 2, 5, 12, and 27. Mr. Ware responded that he did not receive requests 3, 4, 14, 15, 17, 20, 22, 24, 29, 30, 31, 32, 33, 35, and 36. He further responded that he did not receive the records requested as to Ms. Kurt in requests 2, 5, 12, and 27. Mr. Ware did not address requests 6 and 16.

{¶11} Of the 19 partial or full requests Mr. Ware claims he did not receive, Ms. Kurt informed Mr. Ware that the records did not exist as to 8 of them, sent records as to 9 of them, and responded that the other two were either overbroad or unclear, but sent some documents that responded to the request. Ms. Kurt filed affidavits detailing the documents that she sent to Mr. Ware. She also filed copies of those documents with this Court, demonstrating that she had provided them to Mr. Ware. Upon review of the complaint, summary judgment motions, and responses to this Court's order following remand, we find that Ms. Kurt provided records in response to the following requests: 1, 2 (Ludle), 5 (Ludle), 7, 9, 10, 11, 12 (Ludle), 15, 17, 18, 19, 20, 21, 23, 26, 27 (Ludle), 28, 29, 30, 31, 32, 35, and 36.

**{¶12}** We further find that Ms. Kurt did not provide records in response to other requests, but informed Mr. Ware that records did not exist: 2 (Kurt), 3, 4, 5 (Kurt), 12 (Kurt), 24, 27 (Kurt), and 33. Finally, Ms. Kurt explained to Mr. Ware that one request, 14, was overbroad and another, 22, was unclear. Nevertheless, Ms. Kurt provided records responsive to those requests.

**{¶13}** Mr. Ware did not address whether he received the records related to requests 6 and 16. Ms. Kurt responded that no records exist as to request 6. Ms. Kurt also provided a document responsive to request 16. Finally, as noted earlier, we have not addressed requests 8, 13, 25, 34, or 37, pursuant to the Supreme Court's decision.

**{¶14}** As outlined in the preceding paragraphs, we have determined which documents subject to the Public Records Act were produced to Mr. Ware. We find that Ms. Kurt provided documents, if those documents existed, in response to all of Mr. Ware's requests. We now turn to the next matter the Supreme Court directed this Court to address.

> 2.  *Ms. Kurt had legitimate reasons for rejecting*
> *Mr. Ware's requests, to the extent she did.*

**{¶15}** The Supreme Court directed this Court to next address whether Ms. Kurt had legitimate reasons for rejecting Mr. Ware's requests as to documents that were not produced. We conclude she did for all but one document.

**{¶16}** Ms. Kurt did not provide documents related to 8 requests because those documents did not exist. This is a legitimate reason for rejecting Mr. Ware's request. Ms. Kurt has "no duty to create or to provide access to nonexistent records." *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, ¶15. *See, also*, *State ex rel. Ware v. Stone*, 5th Dist. Stark No. 2021CA00042, 2022-Ohio-1151, ¶ 24. Mr. Ware has not argued that these records exist. We conclude that Mr. Ware has not met his burden to establish by clear and convincing evidence

that these records exist. *State ex rel. McCaffrey v. Mahoning Cty. Pros*., 133 Ohio St.3d 139, 2012-Ohio4246, ¶ 26.

{¶17}  Ms. Kurt also arguably rejected two requests, one because it was overbroad and another because it was unclear.  As it relates to request 14, Mr. Ware requested the clerk of court's employee handbook.  Ms. Kurt responded that the request was overbroad because the handbook was over 800 pages long.  She added that she sent the policies he specifically requested in his other requests.

{¶18}  The length of a document alone does not provide a basis for denying a request. Ms. Kurt seemingly addressed this at the end of the January 2020 letter sent to Mr. Ware.  It noted that, as a courtesy, the Clerk of Courts' has not charged inmates for public records requests. She explained that she was sending almost 200 pages to Mr. Ware without charging him but future requests seeking more than 20 pages in a month may require prepayment of the costs for the copies.  Mr. Ware could have responded to this letter, requested the lengthy handbook, and prepaid the cost of producing his copies, but he was not told what that cost would be.

{¶19}  Ms. Kurt should have provided the document or sent him an invoice requesting prepayment of the copy cost. *State ex rel. Ware v. Akron*, 164 Ohio St.3d 557, 2021-Ohio-624, ¶ 15.  The Ohio Public Records Act "requires a public office to make copies of public records available to any person upon request within a reasonable period of time." *Id.* at ¶ 11.  The Act is construed liberally in favor of broad access. *Id.* at ¶ 12.  But the Act does not require the public-records custodian to provide copies free of charge. *Id.* at ¶ 13.  The Supreme Court recognized, in another case involving Mr. Ware, that the custodian may require prepayment of costs before providing copies of public records. *Id.*, quoting R.C. 149.43(B)(1).  In that case, the Supreme Court concluded that if the public records custodian had "informed Ware how much copies of

the records would cost and offered to send copies of those records to him once he paid those costs, then the city would have satisfied its obligations under the statute." *Id.* at ¶ 13.

**{¶20}** Ms. Kurt did not entirely deny Mr. Ware's request for the handbook. She actually provided part of the handbook and noted that he would be required to pay for large requests in the future. But the failure to provide the entire handbook, or to send Mr. Ware an invoice for the copy cost, denied his request. *Id.*

**{¶21}** Although she did not provide the entire handbook in her response in 2020, Ms. Kurt has now provided the entire handbook to Mr. Ware. In the brief she filed following remand, Ms. Kurt asserted that she provided the handbook to Mr. Ware. The handbook was also filed as an exhibit to her brief which was served on Mr. Ware. Accordingly, we need not grant the writ of mandamus to order her to provide it. *See, e.g., Ware* at ¶ 15 (a writ compelling production is not necessary when the document will be provided). We will, however, return to the denial of this request when we address the third matter the Supreme Court ordered this Court to consider.

**{¶22}** As to request 22, Mr. Ware requested certificate of disposal forms for destruction of "office docket books." Ms. Kurt responded that it was unclear what specifically he meant by "office docket books." Nevertheless, she provided documents that she believed were responsive to his request. This was not a rejection of his request. Ms. Kurt actually provided documents she believed were responsive to his unclear request and invited him to provide clarification. Mr. Ware did not respond to clarify his request or to seek additional documents.

**{¶23}** Accordingly, we conclude that, as to these two requests, Ms. Kurt did not, at the time, provide the handbook in response to request 14, but she did provide documents responsive to request 22. Further, we conclude that Ms. Kurt did not have legitimate reasons for not providing the handbook in request 14, but she did appropriately respond to request 22, and Mr.

Ware did not respond to Ms. Kurt's brief to argue otherwise. This brings us to the last matter the Supreme Court directed this Court to address.

### 3.     Mr. Ware is not entitled to statutory damages

**{¶24}**   Finally, we turn to the last matter the Supreme Court ordered this Court to address: whether Mr. Ware is entitled to statutory damages for the record requests that are subject to the Public Records Act, consistent with its opinion.  The Supreme Court recognized that there was a dispute of fact about the length of time it took Ms. Kurt to respond to Mr. Ware's request.  *Ware* at ¶ 23.  The Supreme Court explained the dispute this way:

> {¶ 20} * * * Ware objects to the length of time that it took for the Clerk of Courts' to respond to his public-records requests. R.C. 149.43 (B)(1) states that "a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost *and within a reasonable period of time*." (Emphasis added.)  According to Ware, he submitted his public-records requests on January 22, 2019, but Kurt took "over a year" to respond and she responded only after Ware filed his mandamus complaint.

> {¶ 21} Under the Public Records Act, a requester seeking statutory damages must prove that the request was delivered "by hand delivery, electronic submission, or certified mail." R.C. 149.43(C)(2).  Ware avers that he sent all ten public-records requests by certified mail.

> {¶ 22} Kurt claims that her office first learned of Ware's requests on January 2, 2020, when she received his mandamus complaint.  The clerk's office maintains that it sent responsive documents to Ware on January 29, 2020, and that 27 days is not an unreasonable amount of time to have answered Ware's numerous requests.

**{¶25}**   The dispute, therefore, is both when and how Ms. Kurt became aware of the public records request.  Statutory damages are authorized if a court determines that the public office failed to comply with an obligation set forth in R.C. 149.43(B).  *State ex rel. Mobley v. Toledo*, Slip Opinion No. 2022-Ohio-3889, ¶ 11.  The obligation in this case is to respond within a reasonable time.  Damages are only available if there is a failure to respond appropriately and, as

it relates to this case, the request is served by certified mail. *State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, ¶ 23.

{¶26} The Supreme Court has considered similar disputes in other cases. For example, in *Pietrangelo*, there was a dispute about whether the requester hand-delivered his request. The Supreme Court reviewed the evidence submitted in the case, including contradictory affidavits submitted by the respective parties and a video purporting to show the hand delivery, which the Supreme Court determined was inconclusive. The Supreme Court held that the requester "failed to show by clear and convincing evidence that he delivered the December 30, 2014 public-records request by hand." *Id.* at ¶ 27. Accordingly, the Court held the requester was not entitled to statutory damages. *Id.*

{¶27} The Supreme Court considered a method-of-delivery dispute in an unrelated case brought by Mr. Ware for his public records request made to a different clerk of court. In that case, as in this one, Mr. Ware claimed that he sent multiple requests in one envelope by certified mail. *State ex rel. Ware v. Giavasis*, 163 Ohio St.3d 359, 2020-Ohio-5453, ¶ 32. The clerk received the delivery by certified mail but claimed there was only one request in the envelope, not seven. *Id.* Mr. Ware and the clerk's office presented competing affidavits about what was in the envelope. *Id.* The Supreme Court concluded that "the evidence on this point is evenly balanced. And in such a situation, the requester has not satisfied the heightened burden of proof necessary for an award of statutory damages." *Id.*

{¶28} In the case before us, we likewise have evenly balanced evidence. Mr. Ware provided an affidavit swearing that he served his public records requests by certified mail in January 2019. The certified mail delivery receipt did not include the name of a person who received the delivery. Instead, the receipt had only the initials "C.O.C." There is no evidence to

suggest the meaning of "C.O.C." other than Mr. Ware's assertion that it must mean "Clerk of Courts'." On the other hand, Ms. Kurt provided three affidavits that swore that the clerk of court's office did not receive Mr. Ware's requests until they were filed as attachments to the complaint he filed to begin this mandamus action.

{¶29} Ms. Kurt provided affidavits from two of her staff members and the assistant county prosecutor who wrote a letter to Mr. Ware after he filed this complaint. One clerk's office employee swore that she reviewed the requests Mr. Ware attached to his complaint and that the clerk's office did not have those documents. Another clerk's office employee swore that she had responded to Mr. Ware's numerous earlier public records requests but that she first learned of the requests at issue in this case when the complaint for writ of mandamus was filed. Finally, the assistant county prosecutor incorporated the letter she wrote to Mr. Ware into her affidavit. In that letter, she explained that, until receiving the complaint in this case, the clerk's office did not have any record of receiving Mr. Ware's public records requests.

{¶30} As in *Pietrangelo* and *Ware*, we are confronted with evidence that is evenly balanced. Both Mr. Ware and Ms. Kurt have presented evidence to support their respective positions. As the Supreme Court has explained, however, the requester has the burden to demonstrate by clear and convincing evidence that the request was submitted in a manner that allows for the award of damages. *Giavasis*, 163 Ohio St.3d 359, 2020-Ohio-5453, ¶ 32. In this case, Mr. Ware had the burden to show by clear and convincing evidence that he submitted his request by certified mail. Because the evidence is evenly balanced, Mr. Ware has not met this heightened burden and, therefore, he is not entitled to statutory damages. *Pietrangelo* at ¶ 27; *Giavasis* at ¶ 32.

**{¶31}** The Supreme Court remanded this case for this Court to determine whether Mr. Ware requested the documents in January 2019 or January 2020. We have concluded that Mr. Ware did not demonstrate by clear and convincing evidence that he requested the documents by certified mail in January 2019, and, therefore, Ms. Kurt became aware of the request when the complaint was filed in January 2020. We further conclude that Mr. Ware is not entitled to statutory damages because he failed to meet his burden to show that he sent his request in January 2019 by certified mail.

*Conclusion*

**{¶32}** This Court has concluded (1) which documents subject to the Public Records Act were produced to Mr. Ware, (2) that Ms. Kurt did not have legitimate reasons for not providing the entire handbook to Mr. Ware at the time she responded to the other requests, and that she has now provided that handbook to Mr. Ware, and (3) that Mr. Ware is not entitled to statutory damages for the document requests that are subject to the Public Records Act. Having addressed these questions, this Court concludes that Ms. Kurt's motion for summary judgment must be granted.

**{¶33}** Because it was the filing of this action that prompted a response to Mr. Ware's public records request, however, no costs are taxed.

**{¶34}** The Clerk of Courts' is hereby directed to serve upon all parties not in default notice of this judgment and its date of entry upon the journal. *See* Civ.R. 58.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

KIMANI WARE, Pro se, Relator.

SHERRI BEVAN WALSH, Prosecuting Attorney, and COLLEEN SIMS and MARRETT W. HANNA, Assistant Prosecuting Attorneys, for Respondent.