[Cite as *State ex rel. Harris v. Franklin Med. Ctr.*, 2026-Ohio-908.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Lionel Harris, | : | |
| Relator, | : | No. 24AP-622 |
| v. | : | (REGULAR CALENDAR) |
| Franklin Medical Center, | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on March 19, 2026

**On brief:** *Lionel Harris*, pro se.

**On brief:** *Dave Yost*, Attorney General, *Marcy A. Vonderwell*, and *George Horvath*, for respondent.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

LELAND, J.

{¶ 1}  Relator, Lionel Harris, has filed an original action requesting a writ of mandamus to compel respondent, Franklin Medical Center ("respondent" or "FMC"), to comply with Ohio's Public Records Act.  Relator has also requested statutory damages.

{¶ 2}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends granting relator's request for a writ of mandamus ordering respondent to provide several unfulfilled public records requests, but further recommends denying relator's request for statutory damages.

{¶ 3} Relator, pro se, has filed an objection to the magistrate's decision, challenging the magistrate's recommendation that his request for statutory damages be denied. Relator asserts "none of the excuses put forth" by respondent "legally absolve them from statutory damages." (Relator's Obj. at 2.) Relator maintains the evidence of service is not evenly balanced or inconclusive as to whether his public records request was accomplished by one of the authorized methods under R.C. 149.43(C)(2), i.e., certified mail. According to relator, "[a]ll of the [r]espondent's affidavits are self-serving." (Relator's Obj. at 8.)

{¶ 4} By way of background, relator is an inmate at North Central Correctional Complex, in Marion, Ohio. Upon filing his complaint in mandamus, relator submitted several of his own affidavits in which he "stated that he sent a public-records request via certified mail to [FMC's] 'commissary supervisor' on June 25, 2024." (Appended Mag.'s Decision at ¶ 28.) Relator also submitted a copy of the June 25, 2024 letter containing 13 requests for public records.

{¶ 5} On July 31, 2025, respondent submitted an amended submission of evidence, including the following three affidavits: "the July 30, 2025 affidavit of Christina Robinson, the February 18, 2025 affidavit of Jody Sparks, and the February 18, 2025 affidavit of Gertrude Tonyemba." (Appended Mag.'s Decision at ¶ 31.) Robinson, the warden's administrative assistant at FMC, "stated that she was 'not familiar' with [relator] and had never directly communicated with him." (Appended Mag.'s Decision at ¶ 33, quoting Robinson Aff. at ¶ 5.) Robinson also stated she had never received a certified letter from relator dated June 25, 2024, and there was no record at FMC that such document was ever received by the institution. Robinson averred she became aware of relator's petition after being contacted by the Ohio Attorney General's Office, and that she " 'interpreted [relator's] mandamus action to be a request for records.' " (Appended Mag.'s Decision at ¶ 34, quoting Robinson Aff. at ¶ 12.) Robinson stated relator was subsequently provided some of his requests "on February 14, 2025 'without cost, as a courtesy to [relator] by having them hand-delivered to [relator].' " (Appended Mag.'s Decision at ¶ 34, quoting Robinson Aff. at ¶ 15.)

{¶ 6} In an affidavit dated February 18, 2025, Sparks who served as the warden's administrative assistant at FMC "from October 24, 2022 until July 28, 2024," stated that "there was no record" at FMC of relator's "June 25, 2024 letter having been received,

including any record of a mail room employee having signed that the document was received." (Appended Mag.'s Decision at ¶ 37.)

{¶ 7} In an affidavit dated February 18, 2025, Tonyemba, the commissary manager at FMC, stated that "if she receives a public-records request, she gives it to the institution's public information officer." (Appended Mag.'s Decision at ¶ 38.) She "denied receiving [relator's] June 25, 2024 letter and stated there was no record of [FMC] having received such letter." (Appended Mag.'s Decision at ¶ 38.) Tonyemba further averred FMC " 'does not have a position entitled Commissary Supervisor.' " (Appended Mag.'s Decision at ¶ 38, quoting Tonyemba Aff. at ¶ 7.)

{¶ 8} The magistrate initially determined that, "even if one accepts [FMC's] statements that [relator's] request was first discovered after he filed his mandamus complaint," there is "no dispute" FMC became aware of the request in January 2025 "when Robinson 'learned of the mandamus action.' " (Appended Mag.'s Decision at ¶ 47, quoting FMC's Brief at 6.) The magistrate therefore found FMC "assumed a duty to respond to" relator's requests, and that it "provided documents responsive to the majority of [relator's] requests." (Appended Mag.'s Decision at ¶ 47, 48.) As to the specific 13 public records requests, the magistrate determined FMC failed to comply with its obligations under the Public Records Act with respect to relator's third, twelfth, and thirteenth requests, and thus relator demonstrated a clear legal right to the records sought by those requests.

{¶ 9} Turning to relator's request for statutory damages, the magistrate addressed the provisions of former R.C. 149.43(C)(2),[1] which provided in part:

> If a requester transmits a written request by hand delivery, electronic submission, or certified mail to inspect or receive copies of any public record in a manner that fairly describes the public record or class of public records to the public office or person responsible for the requested public records, except as otherwise provided in this section, the requester shall be entitled to recover the amount of statutory damages set forth

---

[1] As noted by the magistrate, subsequent to the filing of relator's action in mandamus, the General Assembly amended R.C. 149.43 in 2024 H.B. No. 265. Based on that amendment, the statute now provides, effective April 9, 2025, " 'a person committed to the custody of the Department of Rehabilitation and Correction is no longer eligible to receive an award of statutory damages under R.C. 149.43(C).' " (Appended Mag.'s Decision at ¶ 65, fn. 2, quoting *State ex rel. Mack v. Ohio State Hwy. Patrol Cent. Records*, 2025-Ohio-1332, ¶ 12, fn. 1.) The magistrate further noted, however, "it is appropriate in this case 'to apply the version of R.C. 149.43(C) that was effective' at the time [relator] 'made his public-records request and filed his mandamus complaint.' " (Appended Mag.'s Decision at ¶ 65, fn. 2, quoting *Mack* at ¶ 12, fn. 1.)

in this division if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section.

{¶ 10} The magistrate noted FMC "denies that it ever received [relator's] June 25, 2024 letter containing his requests for records or his August 1, 2024 follow-up letter," and that FMC "supports this with statements from the affidavits of Robinson, Sparks, and Tonyemba, all three of whom denied ever receiving the June 25, 2024 letter." (Appended Mag.'s Decision at ¶ 66.) Further, Robinson and Sparks both averred "there is no record at [FMC] of the June 25, 2024 letter having been received," and these individuals also stated "there is no signature from an employee of the [FMC] mailroom that the June 25, 2024 letter was received." (Appended Mag.'s Decision at ¶ 66.)

{¶ 11} The magistrate also noted relator "swore in both his September 25, 2024 and July 9, 2025 affidavits that he sent the June 25, 2024 letter through certified mail to [FMC's] commissary supervisor," and that relator "also submitted a document that [he] claims represents a 'confirmation of delivery of certified mail.'" (Appended Mag.'s Decision at ¶ 67, quoting Relator's Am. Evid. at 2.)

{¶ 12} While observing that relator "has provided evidence tending to support a finding that he sent something by certified mail," the magistrate found "the evidence is inconclusive or—at best—evenly balanced on what [relator's] certified mailing contained, or if it was actually received by [FMC] at all." (Appended Mag.'s Decision at ¶ 69.) Thus, the magistrate concluded, relator "has not established the prerequisites for an award of statutory damages under the Public Records Act." (Appended Mag.'s Decision at ¶ 69.)

{¶ 13} Under Ohio law, "[a] requestor . . . must demonstrate by clear and convincing evidence that he or she made the request by one of the methods of delivery set forth under R.C. 149.43(C)(2)." *State ex rel. Ware v. Fankhauser*, 2023-Ohio-3939, ¶ 20 (11th Dist.), citing *State ex rel. Pietrangelo v. Avon Lake*, 2016-Ohio-5725, ¶ 27.

{¶ 14} In his pro se objection, relator does not dispute that respondent denies receiving a public records request by certified mail; nonetheless, as indicated above, relator contends all of respondent's affidavits are "self-serving." (Relator's Obj. at 8.) As noted by respondent, relator appears to argue in his objection that the magistrate erred when determining he failed to establish an appropriate method of service based on relator's assertion "[m]andamus complaints are delivered to Respondents by certified mail."

(Relator's Obj. at 5.) Such argument, however, is unavailing as the entitlement to statutory damages under former R.C. 149.43 is not dependent on the method of service of a mandamus complaint but, rather, on submission of "a written public-records request by hand delivery, electronic submission, or certified mail to the public office or person responsible for the requested public records." *State ex rel. Ware v. Gabbard*, 2025-Ohio-1022, ¶ 9. *See also State ex rel. Ware v. Giavasis*, 2020-Ohio-5453, ¶ 26, quoting former R.C. 149.43(C)(2) ("Under the Public Records Act, a requestor seeking statutory damages must prove that the *request* was delivered 'by hand delivery, electronic submission, or certified mail.' "). (Emphasis added.)

{¶ 15} Relator also asserts the magistrate employed "the wrong standard of review" in finding " 'the evidence is inconclusive or—at best—evenly balanced' " as to what relator's certified mailing contained, or whether it was actually received by FMC. (Relator's Obj. at 8.)

{¶ 16} The Supreme Court of Ohio, however, has "held that a relator fails to meet his burden of producing clear and convincing evidence when the parties' evidence is evenly balanced." *State ex rel. Ware v. Fankhauser*, 2024-Ohio-5037, ¶ 25, citing *State ex rel. Barr v. Wesson*, 2023-Ohio-3645, ¶ 13, citing *Giavasis* at ¶ 32. On this issue, the Supreme Court has further " 'held that when the evidence on the method of delivery of a public-records request consists of contradictory affidavits or is inconclusive, the requester has not satisfied his burden under R.C. 149.43(C)(2).' " *Id.*, quoting *State ex rel. Ware v. Galonski*, 2024-Ohio-1064, ¶ 22, citing *Pietrangelo*, 2016-Ohio-5725, at ¶ 26-27.

{¶ 17} Here, the magistrate relied on authority cited above in addressing relator's request for statutory damages, and relator's contention that the magistrate applied the wrong standard of review is without merit. Moreover, in light of the record presented, including the competing and contradictory affidavits, we find no error by the magistrate in its determination that the evidence regarding the method of delivery of relator's public records request is inconclusive or, at best, evenly balanced. Under such circumstances, a requester "has not satisfied the heightened burden of proof necessary for an award of statutory damages." *Giavasis*, 2020-Ohio-5453, at ¶ 32. Accordingly, we further find the magistrate did not err in concluding relator failed to establish by clear and convincing

evidence the prerequisites for an award of statutory damages under Ohio's Public Records Act, and we therefore overrule relator's sole objection.

{¶ 18} Upon review of the magistrate's decision, as well as an independent review of the record and due consideration of relator's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We thus overrule relator's objection to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, we grant a limited writ of mandamus ordering FMC to provide the records sought by relator in his third, twelfth, and thirteenth public records requests, and we deny relator's request for statutory damages.

*Objection overruled*; *limited writ of mandamus granted*;
*statutory damages denied.*

DORRIAN and MENTEL, JJ., concur.

———————————

[Cite as *State ex rel. Harris v. Franklin Med. Ctr.*, 2026-Ohio-908.]

<u>**APPENDIX**</u>

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Lionel Harris, | : | |
| Relator, | : | |
| v. | : | No.  24AP-622 |
| Franklin Medical Center, | : | (REGULAR CALENDAR) |
| Respondent. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 11, 2025

*Lionel Harris*, pro se.

*Dave Yost*, Attorney General, and *Marcy A. Vonderwell*, and *George Horvath*, for respondent.

IN MANDAMUS

**{¶ 19}** Relator Lionel Harris requests a writ of mandamus compelling respondent Franklin Medical Center to comply with Ohio's Public Records Act. Harris has also requested statutory damages. For the following reasons, the magistrate recommends granting Harris's request for a writ of mandamus and denying Harris's request for statutory damages.

**I. Findings of Fact**

**{¶ 20}** 1.  Harris is an inmate incarcerated at North Central Correctional Complex in Marion, Ohio.

**{¶ 21}** 2. Franklin Medical Center is an institution under the control of the Department of Rehabilitation and Correction ("DRC").

{¶ 22} 3. Harris commenced this original action with the filing of his complaint for writ of mandamus on October 10, 2024.

{¶ 23} 4. Harris submitted his evidence on February 7, 2025.

{¶ 24} 5. Franklin Medical Center submitted its evidence on February 18, 2025.

{¶ 25} 6. Harris submitted an amended presentation of evidence on July 14, 2025.

{¶ 26} 7. On July 31, 2025, Franklin Medical Center submitted an amended presentation of evidence, an evidence log, and a notice of submission for in camera review. Franklin Medical Center separately submitted directly to the court for in camera review an authenticated copy of records for which it claimed an exception to the production under the Public Records Act.

{¶ 27} 8. Harris submitted his own affidavits in this matter, including an affidavit dated September 25, 2024, which was submitted along with his complaint, and an affidavit dated July 9, 2025, which was included in his amended evidentiary submission.

{¶ 28} 9. In both the September 25, 2024 and July 9, 2025 affidavits, Harris stated that he sent a public-records request via certified mail to Franklin Medical Center's "commissary supervisor" on June 25, 2024. (Sept. 25, 2024 Aff. at 1; July 9, 2025 Aff. at 1.) Harris stated that he received confirmation from the United States Postal Service that his letter was received and signed for on July 1, 2024. After he did not receive a response for 30 days, Harris mailed a second letter "reminding [Franklin Medical Center] that they have a duty to respond to my public records request in a timely manner pursuant to R.C. 149.43." (Sept. 25, 2024 Aff. at 1; July 9, 2025 Aff. at 1.) Harris included with the second letter a copy of his original public-records request.

{¶ 29} 10. Harris submitted a copy of the June 25, 2024 letter containing his public-records requests with both his complaint and his evidentiary submission. Harris's letter, which was addressed to the "commissary supervisor" of Franklin Medical Center, included the following 13 requests:

> 1. Prison official forward to [Mr. Harris,] an up-to-date paper format copy of the commissary price list for each commissary window (Window One; Window Two; Window Three; Window Four, etc..).
>
> 2. A paper format copy of the time off requests for commissary supervisor John or Jane Doe; (*for the last six months.*)

3. A paper format copy of the inmate count logs for the last six months, (*redacted to show the total number of inmates held there*)

4. A paper format copy of your current "general records retention schedule";

5. A paper format copy of a list that includes the name of all public officials that are employed by your office as well as their assigned job; (*for the last year*)

6. A paper format copy of the inmate theft policy;

7. A paper format copy of the employee visit record for the last

thirty days, (*for commissary*)

8. A paper format copy of your Public Records Policy;

9. A paper format copy of the inmate calendar commissary schedule showing what housing units go to the commissary;

10. A paper format copy of all damaged or returned inventory from the last 3 months; and the policy on handling of such merchandise;

11. A paper format copy of all notes, correspondence (electronic or otherwise); memorandum, or any other records that pertains to the Noble correctional inst. commissary ordering from venders and the quantities ordered and received; last six months. (*From Access Securepak*)

12. Paper format copy of the Personnel files of staff members who were assigned to work in the commissary for the past 90 days;

13. Paper format copy of the time off request of the staff members who worked in the commissary for the past ninety (90) days.

(Emphasis added.) (Harris's Am. Evid. at 3.) Though most of the letter was typed, requests 2, 3, 5, 7, and 11 contained handwritten parenthetical notations, which are reflected above in italics.

{¶ 30} 11. Additionally, Harris submitted documents purportedly reflecting a "Personal A/C Withdrawal Check Out-Slip" and a confirmation by the United States Postal Service of a certified mailing. (Harris's Am. Evid. at 2, 5, 6.)

{¶ 31} 12. In its amended submission of evidence, Franklin Medical Center presented three affidavits: the July 30, 2025 affidavit of Christina Robinson, the

February 18, 2025 affidavit of Jody Sparks, and the February 18, 2025 affidavit of Gertrude Tonyemba.

{¶ 32} 13. Robinson, the warden's administrative assistant at Franklin Medical Center, stated that she had worked for DRC since September 2018, though she did not start working in her current position until October 20, 2024. According to Robinson, the warden's administrative assistant position was vacant between July 29 and October 19, 2024. Part of Robinson's job duties as the warden's administrative assistant include responsibility for managing the public-records requests for Franklin Medical Center, including all requests made by inmates.

{¶ 33} Robinson stated that she was "not familiar" with Harris and had never directly communicated with him. (Robinson Aff. at ¶ 5.) According to Robinson, Harris was "not currently, and has never been, housed at [Franklin Medical Center]." (Robinson Aff. at 2.) Robinson stated that the "only information about Mr. Harris I retain has been from [Harris's] Petition as relayed to me by the Ohio Attorney General's Office." *Id.* With regard to Harris's public-records request, Robinson stated:

> I understand that Mr. Harris alleges in his Petition that he sent a certified letter to the [Franklin Medical Center] Commissary Supervisor dated June 25, 2024, and delivered to a P.O. Box on July 1, 2024. However, I, and the Warden's Office, have never received such a letter. In reviewing the matter, and searching all incoming mail, I have verified that there is no record that it was signed for by [a Franklin Medical Center] employee. . . . Further, there is no record at [Franklin Medical Center] that this document was ever received by the institution. There is no signature by an [Franklin Medical Center] mailroom employee that the document was received. I did not receive this document. I confirmed with Jody Sparks, who served as the Warden's [administrative assistant] and [public information officer] on July 1, 2024, that he did not receive this document.

*Id.* at ¶ 6. Robinson stated that no letter from Harris dated August 1, 2024 was ever received by Franklin Medical Center. Furthermore, Robinson stated that Franklin Medical Center "does not have a position entitled Commissary Supervisor," though it "does have a Commissary Manager." *Id.* at ¶ 9.

{¶ 34} Robinson averred that in January 2025, she was contacted regarding Harris's petition by the Ohio Attorney General's Office. "[D]espite having never received a public

records request from Mr. Harris," Robinson "interpreted Mr. Harris's mandamus action to be a request for records." (Robinson Aff. at ¶ 12.) According to Robinson, records responsive to some of Harris's requests were provided on February 14, 2025 "without cost, as a courtesy to Mr. Harris by having them hand-delivered to Mr. Harris." *Id.* at ¶ 15.

{¶ 35} 14. An exhibit attached to Robinson's affidavit reflects a letter from DRC Legal Services to Harris dated February 14, 2025. The letter restates Harris's 13 public-records requests, though some of the language Harris used in his requests was omitted. For example, while the letter restated the entirety of Harris's second request, including the handwritten notation, "for the last six months," it omitted the handwritten notation, "redacted to show the total number of inmates held there," in Harris's third request. (Franklin Medical Center Am. Evid. at 8; Harris's Am. Evid. at 3.) With regard to requests 1, 2, 4, 5, 6, 7, 8, 9, and 10, DRC Legal Services indicated that responsive records were enclosed. For request 11, DRC Legal Services stated: "FMC does not have access to records of Noble Correctional Institution (NCI). You will need to contact NCI for these records." (Franklin Medical Center Am. Evid. at 9.) For both request 12 and 13, DRC Legal Services stated: "We are unable to process this request as it does not provide sufficient information for us to identify responsive records. Ohio Public Records Law does not require ODRC to conduct research to determine what records may be responsive to your request. Please provide specific employee names." (Franklin Medical Center Am. Evid. at 9-10.)

{¶ 36} 15. Harris acknowledged in his July 9, 2025 affidavit that Franklin Medical Center "provided responsive records" to his public-records request in February 2025, with the exception of requests 3, 12, and 13. Those three requests, according to Harris, "were denied." (July 9, 2025 Aff. at 1.)

{¶ 37} 16. In an affidavit dated February 18, 2025, Sparks stated that he served as the warden's administrative assistant at Franklin Medical Center from October 24, 2022 until July 28, 2024, when he was promoted to deputy warden of operations. Sparks stated that there was no record at Franklin Medical Center of Harris's June 25, 2024 letter having been received, including any record of a mail room employee having signed that the document was received. Sparks stated that he did not receive the June 25, 2024 letter. Sparks stated that Franklin Medical Center "does not have a position entitled Commissary Supervisor." (Sparks Aff. at ¶ 6.)

{¶ 38} 17.  In an affidavit that was also dated February 18, 2025, Tonyemba stated that she became the commissary manager at Franklin Medical Center in 2019. Tonyemba stated that if she receives a public-records request, she gives it to the institution's public information officer. Tonyemba denied receiving Harris's June 25, 2024 letter and stated that there was no record of Franklin Medical Center having received such letter. Tonyemba also stated that Franklin Medical Center "does not have a position entitled Commissary Supervisor." (Tonyemba Aff. at ¶ 7.)

{¶ 39} 18.  Among the materials Franklin Medical Center submitted directly to the court for in camera review, Franklin Medical Center provided the affidavit of Sarah Pierce, staff counsel to DRC. Pierce stated "[c]ounts are a critical security measure at [DRC]" and asserted that "[c]ount procedures and count logs are maintained as confidential security records." (Pierce Aff. at ¶ 9.) Pierce indicated that DRC "regularly publishes general population data for each of its institutions (see https://data.ohio.gov/)" and provided an example of this online data in an exhibit attached to the affidavit. *Id.*

## II. Discussion and Conclusions of Law

{¶ 40} Harris requests a writ of mandamus ordering Franklin Medical Center to provide him with the requested records for inspection and copying.

## A. Ohio's Public Records Act

{¶ 41} "In Ohio, public records are the people's records, and officials in whose custody they happen to be are merely trustees for the people." *State ex rel. Warren Newspapers v. Hutson*, 1994-Ohio-5, ¶ 17. Ohio's Public Records Act, which is codified at R.C. 149.43, "reflects [Ohio's] policy that 'open government serves the public interest and our democratic system.' " *State ex rel. Glasgow v. Jones*, 2008-Ohio-4788, ¶ 13, quoting *State ex rel. Dann v. Taft*, 2006-Ohio-1825, ¶ 20. *See White v. Clinton Cty. Bd. of Commrs.*, 1996-Ohio-380, ¶ 15 ("[P]ublic scrutiny is necessary to enable the ordinary citizen to evaluate the workings of his or her government and to hold government accountable. If the public can understand the rationale behind its government's decisions, it can challenge or criticize those decisions as it finds necessary; the entire process thus allows for greater integrity and prevents important decisions from being made behind closed doors.").

{¶ 42} The Public Records Act "requires a public office to make copies of public records available to any person on request and within a reasonable period of time." *State ex rel. McDougald v. Greene*, 2020-Ohio-3686, ¶ 9, citing R.C. 149.43(B)(1). Requestors are entitled to "have full access to public records unless the requested records fall within one of the exceptions specifically enumerated in the act." *State ex rel. Fair Housing Opportunities of Northwest Ohio v. Ohio Fair Plan*, 2022-Ohio-385, ¶ 7 (10th Dist.). "If a request is denied 'in part or in whole,' the records custodian must provide the requester with an explanation." *State ex rel. Culgan v. Jefferson Cty. Clerk of Courts*, 2024-Ohio-5699, ¶ 14, quoting R.C. 149.43(B)(3). "A redaction shall be deemed a denial of a request to inspect or copy the redacted information, except if federal or state law authorizes or requires a public office to make the redaction." R.C. 149.43(B)(1).

{¶ 43} The Public Records Act is construed liberally in favor of broad access with any doubts resolved in favor of disclosure. *State ex rel. Mobley v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-1765, ¶ 7. "Exceptions to disclosure . . . are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, ¶ 10. "A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *Id.* "[W]hen the applicability of a public-records exemption is not readily apparent from the content of the record, the records custodian must provide 'specific factual support that goes beyond mere conclusory statements in an affidavit to show that the record sought falls squarely within the prescribed exception.' " *State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, ¶ 34, quoting *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 50. However, "when the applicability of the exemption is obvious from the face of the documents," a reviewing court "will not sacrifice those interests simply because a party should have done a better job setting forth the obvious." *McDougald v. Greene*, 2020-Ohio-4268, ¶ 13.

**B. Requirements for Relief in Mandamus**

{¶ 44} "Mandamus is an appropriate remedy to compel compliance with the Public Records Act." *State ex rel. Reese v. Ohio Dept. of Rehab. & Corr. Legal Dept.*, 2022-Ohio-2105, ¶ 10, citing R.C. 149.43(C)(1)(b). In order for a writ of mandamus to issue in this

matter, Harris must establish by clear and convincing evidence (1) a clear legal right to the requested relief, and (2) a clear legal duty on the part of Franklin Medical Center to provide it. *State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 10. " 'Clear and convincing evidence' is a measure or degree of proof that is more than a preponderance of the evidence but less than the beyond-a-reasonable-doubt standard required in a criminal case; clear and convincing evidence produces in the trier of fact's mind a firm belief of the fact sought to be established." *State ex rel. Ware v. Crawford*, 2022-Ohio-295, ¶ 14, citing *State ex rel. Miller v. Ohio State Hwy. Patrol*, 2013-Ohio-3720, ¶ 14.

## C. Analysis

{¶ 45} Harris asserts Franklin Medical Center has failed to fulfill its obligations under the Public Records Act by producing the requested records. In addition to requesting a writ ordering Franklin Medical Center to produce the records, Harris also seeks relief in the form of statutory damages. Franklin Medical Center responds that Harris cannot demonstrate entitlement to relief in mandamus, either with regard to his claims for the production of records or statutory damages under the Public Records Act, for several reasons.

{¶ 46} Initially, Franklin Medical Center argues that it never received Harris's public records request. In support of this, Franklin Medical Center states that attached to Harris's complaint "is a typed letter that contains a hand written letter addressed to the Commissary Supervisor, Franklin Medical Center, Zone A, PO Box 23568, **1900** Harmon Avenue, Columbus, OH 43223" and a "handwritten letter, dated August 1, 2024, that purports to be a follow-up." (Sic passim.) (Franklin Medical Center's Brief at 1-2.) Franklin Medical Center then claims, with citation to a website, that Franklin Medical Center "is located at **1990** Harmon Avenue, Columbus, OH 43223." (Emphasis in original.) *Id.* at 2. Franklin Medical Center points to the affidavits of Robinson, Sparks, and Tonyemba in arguing that Harris's request "was not actually received by Franklin Medical Center Commissary 'Supervisor' or public records officer." *Id.* Thus, Franklin Medical Center argues that Harris's request for relief in mandamus must fail because Franklin Medical Center "acted in a timely manner to provide the requested records to Relator even though they did not actually receive a public records request from Relator." *Id.* at 6.

{¶ 47} Franklin Medical Center asserts that Harris cannot prevail in this mandamus action because it did not actually receive his June 25, 2024 letter and there is no position titled "commissary supervisor" at Franklin Medical Center. Yet, even if one accepts Franklin Medical Center's statements that Harris's request was first discovered after he filed his mandamus complaint in this case, there is no dispute that Franklin Medical Center was aware of the request in January 2025 when Robinson "learned of the mandamus action." (Franklin Medical Center's Brief at 6.) Franklin Medical Center admits that "[w]hen . . . Robinson . . . was alerted to [Harris's mandamus] Petition, she elected to treat the same as a public records request and responded to the same on February 14, 2025." (Franklin Medical Center's Brief at 3.) Thus, Franklin Medical Center did not simply defend against Harris's mandamus complaint by arguing that Harris's public-records request was never received; rather, it chose to address Harris's request, including by providing some of the requested records. By its—arguably laudable—choice to treat Harris's complaint as a request, there can be no doubt that Franklin Medical Center "assumed a duty to respond to the request." *State ex rel. Penland v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-4130, ¶ 10. As a result, for purposes of determining whether Franklin Medical Center complied with its duties to provide public records, it is immaterial whether Franklin Medical Center initially received Harris's request for records in July 2024, when Harris claims Franklin Medical Center received his letter, or in January 2025, when Franklin Medical Center admits Robinson was alerted to this mandamus action and chose to treat it as a public-records request. As will be discussed further below, this distinction only becomes relevant when considering Harris's request for statutory damages.

{¶ 48} Having assumed a duty to respond to Harris's request, Franklin Medical Center provided documents responsive to the majority of Harris's requests. Harris has acknowledged that Franklin Medical Center "provided responsive records" to all of his requests "with the exception of" three identified requests. (July 9, 2025 Aff. at 1.) Harris does not dispute Franklin Medical Center's responses to requests 1, 2, and 4 through 11, but instead raises arguments pertaining only to the remaining requests—requests 3, 12, and 13—that he asserts "were denied." (July 9, 2025 Aff. at 1.) Thus, with the exception of his claim for statutory damages, Harris's public-records mandamus claim is limited to requests

3, 12, and 13, since his claim as to the other requests is moot. *See State ex rel. Suggs v. McConahay*, 2022-Ohio-2147, ¶ 8 (stating that "generally, a public-records mandamus claim becomes moot when the records custodian provides the requested documents"); *see also State ex rel. Ames v. Three Rivers Local School Dist. Records Comm*, 2024-Ohio-2686, ¶ 20 (finding argument regarding request for court costs in public-records case was waived because the relator's merit brief contained no argument in support of the request).

{¶ 49} Franklin Medical Center responds that it complied with its obligations under the Public Records Act for the three remaining requests. As the reasons provided by Franklin Medical Center are identical for requests 12 and 13, they will be discussed together.

*1. Twelfth and Thirteenth Requests—Commissary Records*

{¶ 50} Harris's twelfth and thirteenth requests involve records pertaining to staff members of the Franklin Medical Center commissary. In his twelfth request, Harris sought a copy of the personnel files of staff members who were assigned to work in the commissary for the past 90 days. In his thirteenth request, Harris sought a copy of the time-off requests of staff members who worked in the commissary for the past 90 days. Franklin Medical Center responded that it was "unable to process" these requests because the requests did "not provide sufficient information for us to identify responsive records." (Franklin Medical Center Am. Evid. at 9-10.) Franklin Medical Center informed Harris that "Ohio Public Records Law does not require [DRC] to conduct research to determine what records may be responsive to your request" and asked him to "provide specific employee names." *Id*.

{¶ 51} Harris contends in his reply brief that Franklin Medical Center has failed to comply with its obligations under R.C. 149.43(B)(2) because in denying his twelfth and thirteenth requests, it failed to provide him with information about how the records are maintained and accessed. "If a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested," R.C. 149.43(B)(2) permits the denial of the request, but also requires the public office or the person responsible for the requested public record to "provide the requester with an opportunity to revise the request by informing the requester of the manner in which

records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties."

{¶ 52} Though Franklin Medical Center provided Harris with a copy of its records retention schedule in response to his fourth request, review of the parties' evidence does not reveal that Franklin Medical Center complied with R.C. 149.43(B)(2) by informing Harris of the manner in which its records were maintained and accessed in the ordinary course of its duties. *Compare State ex rel. Zidonis v. Columbus State Community College*, 2012-Ohio-4228, ¶ 35-41 (rejecting contention that public office failed to comply with R.C. 149.43(B)(2) because, in part, the public office explained that it retained, organized, and accessed its records based on content). Yet, even if Franklin Medical Center failed to comply with R.C. 149.43(B)(2), as appears to be the case, this failure does not entitle Harris to a writ of mandamus because Harris has not requested that this court compel Franklin Medical Center to provide him with information about how the requested records are maintained or accessed. *See Howson*, 2024-Ohio-4619, ¶ 30; *State ex rel. ESPN, Inc. v. Ohio State Univ.*, 2012-Ohio-2690, ¶ 12.

{¶ 53} Turning to the twelfth and thirteenth requests themselves, Franklin Medical Center argues that Harris cannot demonstrate entitlement to relief for these two requests because they "were too ambiguous." (Franklin Medical Center's Brief at 7.) The person seeking records under the Public Records Act is responsible for identifying the records sought with reasonable clarity. *See State ex rel. Morgan v. New Lexington*, 2006-Ohio-6365, ¶ 29. "A public-records request may be properly denied if it is so 'ambiguous or overly broad . . . that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested.' " *State ex rel. Howson v. Edmonson*, 2024-Ohio-4619, ¶ 23, quoting R.C. 149.43(B)(2).

{¶ 54} Harris's twelfth and thirteenth requests do not, on their face, appear to be ambiguous or overly broad requests. Harris identified the specific types of records he sought, i.e., personnel files and time-off requests. Moreover, Harris limited the records request by classification of employee and a time frame, i.e., employees of Franklin Medical Center who were assigned to or did work in the commissary within the past 90 days. Though Franklin Medical Center submitted several affidavits in this matter, none of these affidavits explain why Harris's twelfth and thirteenth requests lacked sufficient

information to identify responsive records. Nor do the reasons offered by Franklin Medical Center in its denial of Harris's requests explain how the denials are supported under the Public Records Act.

{¶ 55} In its response to Harris's requests, which were referenced in Robinson's affidavit, Franklin Medical Center said that the Public Records Act does not require DRC, the state department of which Franklin Medical Center is a part, to conduct research to determine what records may be responsive. But that is not entirely an accurate statement of law. Rather, public-records requests that require a public office or records custodian to perform *improper* research are invalid. *Compare State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5110, ¶ 26 (holding requests for communications between specified employees did not require public office to conduct improper or impermissible research), *with State ex rel. Shaughnessy v. Cleveland*, 2016-Ohio-8447, ¶ 10 (finding records request to be "improper" because it required the public office "to do research for [the requester] and to identify a specific subset of records containing selected information"). "[T]o constitute improper research" under the Public Records Act, "a record request must require the government agency to either search through voluminous documents for those that contain certain information or to create a new document by searching for and compiling information from existing records." *State ex rel. Carr v. London Corr. Inst.*, 2015-Ohio-2363, ¶ 22. *See Morgan* at ¶ 30 ("Requests for information and requests that require the records custodian to create a new record by searching for selected information are improper requests under R.C. 149.43."). This distinction makes sense since nearly any public-records request could be said to involve some "research," as that term is commonly used in its broadest sense.

{¶ 56} Here, there is no evidence offered by Franklin Medical Center that Harris's twelfth and thirteenth requests necessitated improper research by requiring Franklin Medical Center to search through voluminous documents or to create a new document by searching and compiling information. Again, Harris identified the specific types of records he sought and limited the requests by classification of employee and a time frame. Franklin Medical Center does not dispute that records of these types exist. Franklin Medical Center has not supplied evidence explaining the steps that would be required to retrieve the requested records, or provided evidence that the specific records would have required

research to identify a specific subset of records. *Compare Shaughnessy* at ¶ 4, 10 (explaining a public-records request was improper because, based on evidence submitted detailing steps involved to identify responsive records, the public office had to identify a specific subset of records containing selected information in its database).

{¶ 57} Franklin Medical Center also argues there is no evidence that Harris "followed up with" it and "supplied additional information." (Franklin Medical Center's Brief at 8.) However, there is no requirement under the Public Records Act to follow up with the public office or supply additional information regarding a reasonably clear request. And, again, Franklin Medical Center does not explain why the request is unclear. Franklin Medical Center similarly instructed Harris to provide it with employee names. But there is no requirement under the Public Records Act to specifically identify the name of an employee when seeking types of records. *See generally Morgan*, 2006-Ohio-6365, ¶ 37 (stating that "we have never held that in order to constitute a viable request, the requester must specify the author and date of the records requested"). Franklin Medical Center does not say that without the name of an employee, the search required to fulfill the request would return impermissibly voluminous records. *Compare State ex rel. Warren Newspapers v. Hutson*, 1994-Ohio-5, ¶ 22 (finding that while "admittedly broad," a request for a police department to produce "all incident reports and traffic tickets written" in a specific year did not amount to seeking a "complete duplication" of the police department's files since it sought "files in certain categories from specific years"). Franklin Medical Center also does not provide evidence that its system of records lacks the capability to retrieve the requested records in the absence of specific employee names or that the lack of employee names would require improper research.

{¶ 58} In sum, Harris's twelfth and thirteenth requests do not, on their face, appear to be ambiguous or overly broad. *See Morgan* at ¶ 37 ("We do not require perfection in public-records requests."). Franklin Medical Center has had the opportunity throughout the litigation of this matter to introduce evidence to support its denial of Harris's twelfth and thirteenth requests. Franklin Medical Center has not provided such evidence. Merely saying that a request is ambiguous does not make it so. As a result, Franklin Medical Center failed to comply with its obligations under the Public Records Act with regard to Harris's twelfth and thirteenth requests.

*2. Third Request—Count Logs*

{¶ 59}  In his third request, Harris sought a "paper format copy of the inmate count logs for the last six months (redacted to show the total number of inmate held there)." (Harris's Am. Evid. at 3, Ex. A.) Franklin Medical Center invokes the security record exception under R.C. 149.433 in arguing that it is under no legal duty to provide Harris with the records sought in his third request.

{¶ 60}  Under R.C. 149.433, "a record kept by a public office that is a security record is not a public record" for purposes of the Public Records Act and "is not subject to mandatory release or disclosure" under the Act. A security record is defined as any of the following:

> (1) Any record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage;
>
> (2) Any record assembled, prepared, or maintained by a public office or public body to prevent, mitigate, or respond to acts of terrorism, including any of the following:
>
> (a) Those portions of records containing specific and unique vulnerability assessments or specific and unique response plans either of which is intended to prevent or mitigate acts of terrorism, and communication codes or deployment plans of law enforcement or emergency response personnel;
>
> (b) Specific intelligence information and specific investigative records shared by federal and international law enforcement agencies with state and local law enforcement and public safety agencies;
>
> (c) National security records classified under federal executive order and not subject to public disclosure under federal law that are shared by federal agencies, and other records related to national security briefings to assist state and local government with domestic preparedness for acts of terrorism.
>
> (3) An emergency management plan adopted pursuant to section 5502.262 of the Revised Code.

R.C. 149.433(A).

{¶ 61}  Franklin Medical Center argues that "[t]he release of inmate count logs could reveal which inmates are receiving medical treatment at [Franklin Medical Center] and would also expose housing and transportation patterns." (Franklin Medical Center's Brief at 10.) Franklin Medical Center states that "[s]uch information not only risks the safety of

the inmates receiving medical treatment, but also subjects [Franklin Medical Center] to increase[d] security risks by allowing the public knowledge of housing and transportation patterns." *Id.*

{¶ 62} In support of its argument, Franklin Medical Center provided the affidavit of Sarah Pierce, staff counsel to DRC. Pierce stated that "[c]ounts are a critical security measure at [DRC]" and asserts that "[c]ount procedures and count logs are maintained as confidential security records." (Pierce Aff. at ¶ 9.) Nonetheless, Pierce also noted that DRC "regularly publishes general population data for each of its institutions (see https://data.ohio.gov/)" and provides an example of the data contained at the aforementioned website in an exhibit attached to the affidavit. *Id.* Unlike this publicly available general population data, Pierce stated that count logs "reveal housing unit level data that exposes incarcerated person movement and 'out counts' (incarcerated persons who are outside of the institution," which could be misused for various purposes that implicate the security of the correctional institutions. *Id.* As a result, Pierce stated that "count procedures and data are a high security concern" for DRC. *Id.*

{¶ 63} Franklin Medical Center's arguments and Pierce's averments do not directly address the specific material Harris sought in his third request. Harris did not seek the *entire* count logs for Franklin Medical Center for the last six months. Rather, Harris sought the count logs "redacted to show the total number of inmates held there." (Harris's Am. Evid. at 3, Ex. A.) Whatever the merit of Franklin Medical Center's arguments regarding the release of other portions of the count logs, none of Franklin Medical Center's arguments, or the evidence submitted in support of such arguments, demonstrates why releasing only the portions of the count logs reflecting the total number of inmates held in Franklin Medical Center constitutes a security record within the meaning of R.C. 149.433(A). Based on the evidence submitted by Franklin Medical Center, the total number of inmates in a count log is not a record that "contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." R.C. 149.433(A)(1). Nor is the total number of inmates in a count log a record that is "assembled, prepared, or maintained by a public office or public body to prevent, mitigate, or respond to acts of terrorism." R.C. 149.433(A)(2). This record also does not appear to be an "emergency management plan." R.C. 149.433(A)(3). Indeed, as

acknowledged by Pierce, "general population data for each of [DRC's] institutions" is publicly available online. (Pierce Aff. at ¶ 9.)

{¶ 64} From individualized scrutiny of the records supplied by Franklin Medical Center and review of the statements in supporting materials, including Pierce's affidavit, the magistrate finds Franklin Medical Center has not established that the specific records at issue in Harris's third request, i.e., inmate count logs for the last six months redacted to show the total number of inmate held there, are security records that fall squarely within the meaning of the security records exception in R.C. 149.433. *See generally State ex rel. Master v. Cleveland*, 1996-Ohio-228, ¶ 30, quoting *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St. 3d 79 (1988), paragraph four of the syllabus (" '[W]hen a governmental body asserts that public records are excepted from disclosure and such assertion is challenged, the court must make an individualized scrutiny of the records in question. If the court finds that these records contain excepted information, this information must be redacted and any remaining information must be released.' "); R.C. 149.43(B))(1) ("If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt."). Franklin Medical Center provides no other basis for its denial of Harris's third request. As a result, Franklin Medical Center has failed to comply with its obligations under the Public Records Act by refusing to provide such records.

*3. Statutory Damages*

{¶ 65} Finally, Harris has requested statutory damages. At the time Harris filed his mandamus complaint in this case,[2] the Public Records Act provided for statutory damages as follows:

---

[2] After this action in mandamus was commenced, the General Assembly substantially amended R.C. 149.43 in 2024 H.B. No. 265 ("H.B. 265"). Effective April 9, 2025, H.B. 265 amended R.C. 149.43 "such that a person committed to the custody of the Department of Rehabilitation and Correction is no longer eligible to receive an award of statutory damages under R.C. 149.43(C)." *State ex rel. Mack v. Ohio State Highway Patrol Central Records*, 2025-Ohio-1332, ¶ 12, fn.1. However, it is appropriate in this case "to apply the version of R.C. 149.43(C) that was effective" at the time Harris "made his public-records request and filed his mandamus complaint." *Id. See State ex rel. Baker v. Treglia*, 2025-Ohio-2816, ¶ 29 n.1.

> If a requester transmits a written request by hand delivery, electronic submission, or certified mail to inspect or receive copies of any public record in a manner that fairly describes the public record or class of public records to the public office or person responsible for the requested public records, except as otherwise provided in this section, the requester shall be entitled to recover the amount of statutory damages set forth in this division if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section.

Former R.C. 149.43(C)(2). "A requester who fails to prove that delivery was accomplished by one of the methods authorized in R.C. 149.43(C)(2) is ineligible to receive an award of statutory damages." *State ex rel. McDougald v. Greene*, 2020-Ohio-3686, ¶ 14.

{¶ 66} As discussed above, Franklin Medical Center denies that it ever received Harris's June 25, 2024 letter containing his requests for records or his August 1, 2024 follow-up letter. Franklin Medical Center supports this with statements from the affidavits of Robinson, Sparks, and Tonyemba, all three of whom denied ever receiving the June 25, 2024 letter. Moreover, Robinson and Sparks both averred that there is no record at Franklin Medical Center of the June 25, 2024 letter having been received. They also stated that that there is no signature from an employee of the Franklin Medical Center mailroom that the June 25, 2024 letter was received.

{¶ 67} On the other hand, Harris swore in both his September 25, 2024 and July 9, 2025 affidavits that he sent the June 25, 2024 letter through certified mail to Franklin Medical Center's commissary supervisor. Harris averred that he received confirmation from the United States Postal Service that the letter was received and signed for on July 1, 2024. In support of this, Harris provided a "Personal A/C Withdrawal Check Out-Slip," which appears to reflect a charge for certified mail to Franklin Medical Center at "P.O. Box 23658, 1900 Harmon Ave." (Harris's Am. Evid. at 5.) This document also included a handwritten tracking number. Harris also submitted a document that Harris claims represents a "confirmation of delivery of certified mail." (Harris's Am. Evid. at 2.) This document appears to reflect a printout from the United States Postal Service for a certified mailing matching the tracking number on the Personal A/C Withdrawal Check Out-Slip.

{¶ 68} It has been held that "a relator fails to meet [the relator's] burden of producing clear and convincing evidence when the parties' evidence is evenly balanced."

*State ex rel. Ware v. Fankhauser*, 2024-Ohio-5037, ¶ 25. Where "the evidence on the method of delivery of a public-records request consists of contradictory affidavits or is inconclusive, the requester has not satisfied [their] burden under R.C. 149.43(C)(2)." *State ex rel. Ware v. Galonski*, 2024-Ohio-1064, ¶ 22, citing *State ex rel. Pietrangelo v. Avon Lake*, 2016-Ohio-5725, ¶ 26-27.

{¶ 69} Harris has provided evidence tending to support a finding that he sent something by certified mail. Yet, the evidence is inconclusive or—at best—evenly balanced on what Harris's certified mailing contained, or if it was actually received by Franklin Medical Center at all. Therefore, Harris has not established the prerequisites for an award of statutory damages under the Public Records Act. *See State ex rel. Mobley v. Viehweger*, 2024-Ohio-4748, ¶13; *State ex rel. Ware v. Giavasis*, 2020-Ohio-5453, ¶ 32.

**D. Conclusion**

{¶ 70} For the foregoing reasons, Harris has demonstrated a clear legal right under the Public Records Act to the records he sought in his third, twelfth, and thirteenth public-records requests and a clear legal duty on the part of Franklin Medical Center to provide them. Accordingly, it is the decision and recommendation of the magistrate that this court should issue a writ of mandamus ordering Franklin Medical Center to provide the records sought by Harris in his third, twelfth, and thirteenth public-records requests. The magistrate recommends denying Harris's request for statutory damages.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.